[Crim. No. 419. Third Appellate District.—June 14, 1918.]

## THE PEOPLE, Respondent, v. NICK EANTOSCA, Appellant.

CRIMINAL LAW — ASSAULT WITH DEADLY WEAPON WITH INTENT TO COMMIT MURDER—EVIDENCE—CERTAINTY OF WITNESS AS TO IDENTIFICATION OF DEFENDANT—ARGUMENTATIVE QUESTION—EXCLUSION OF ANSWER HARMLESS ERROR.—In a prosecution for assault with a deadly weapon with intent to commit murder, where the prosecuting witness positively identified the defendant, the latter was not prejudiced by the refusal of the court to permit an identifying witness to answer the question as to whether he would be as sure about identification if the defendant were on trial for murder.

ID.—BROKEN SHOVEL AND CLUB—ADMISSIBILITY.—In such a prosecution, where the sheriff identified a broken shovel and a club as having been found at the place of the assault and the prosecuting witness stated that he thought he was struck with such weapons, which bore blood-stains, such weapons were admissible in evidence.

APPEAL from a judgment of the Superior Court of Amador County, and from an order denying a new trial. Fred V. Wood, Judge.

The facts are stated in the opinion of the court.

Ernest B. D. Spagnoli, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted of the crime of assault with a deadly weapon with intent to commit murder. He moved for a new trial, which was denied, and he was thereupon sentenced to imprisonment in the state prison for the term of fourteen years. Upon the facts, the defense was an *alibi.* The proof of the *alibi* consisted of the testimony of the defendant and his brother, both of whom testified that they were at their cabin not far from the scene of the assault the entire evening and until after 10 o'clock of the twenty-sixth day of April, 1917. The assault was made about fifteen minutes before 10 o'clock. If the evidence was sufficient to support the verdict, it necessarily disposes of the *alibi* adversely to defendant. The evidence, we think, justified the verdict.

The prosecuting witness, August Chiesa, was a miner and was working on the night shift, from 10:30 P. M. until 6:30 in the morning, at the Bunker Hill Mine, Amador County. He testified that he left his lodging place about fifteen minutes to ten on the night of the assault and reached a point about one hundred feet from the mine. ''Q. Just tell the jury what happened then. A. When I was there by the mine, Nick Eantosca was in front of me and I recognized him well. As soon as I raised my head up, I looked at him and I saw it was him and he hit me right away. The first hit that he gave me, I did not fall. I raised my hand up and hit him in the face, but I don't know what point I got him in the face. At the same time I hit him with my hand in the face; I had my lunch basket. The lunch bucket go out of my hand and it go on the ground. When I left my bucket fall on the ground, I turned and saw somebody behind me and at the same time they hit me with something; I thought it was— Mr. Spagnoli: We ask that that be stricken out—a conclusion of the witness. Mr. Snyder: It was the witness' best judgment. The Court: Do you know what he hit you with? A. I was not sure; it was only I heard something fall on the ground and I

thought it was the sound of— The Court: That may go out as to what he thought it was. Mr. Snyder: Then what happened? A. Then I fell on the ground and then I saw that both of them was there and both of them hit me. I did not holler or I did not talk. When I was down on the ground, I had my face looking at the ground, on the ground, and my arm like this [indicating] and then they used something, maybe a —— and they hit me on the back four or five times. Mr. Spagnoli: I ask that answer be stricken out, a conclusion of the witness. A. I think they hit me with a —— because I felt the hit right on my back. Mr. Spagnoli: I think the witness should be instructed not to give his conclusions. The Court: What he thought may go out. A. When I remained there about a minute like a dead man, I saw the partner of Nick Eantosca going away, and Nick Eantosca, when I had my arm like this [indicating], I was not unconscious, I saw Nick Eantosca take the razor out of his pocket and cut me right here [indicating neck]. When I was there and I know what I was doing, I raised my arm up so he could not cut me down lower. Q. Did he cut you with the razor? A. Yes, he did. Q. Where? Show the jury where you were cut with the razor. A. [Indicates.] The Court: Q. You say the defendant here is the one that cut you? A. Yes, I am sure it was Nick Eantosca. Q. You say there were two men there; did each of them hit you with something? A. Yes, both of them hit me, but who used the razor was Nick Eantosca. Q. The defendant in this case is the one who used the razor? A. Yes, this fellow [indicating Nick Eantosca].''

Dr. G. L. Lynch was called to treat Chiesa that night. "Q. State what you found in the way of wounds. A. I found a long cut on the left side of the neck and a number of bruises on his back and his right arm, and one or two on the top of his head.''

Witness Cassassa testified that he saw defendant and another man going toward the Bunker Hill mine and in the vicinity of the place of the assault, after 9 o'clock. The witness was cross-examined at considerable length, the purpose being to discredit his testimony that he was where he testified he was and recognized Eantosca. "Q. Now, you are absolutely sure that this is the man you saw? A. Sure, he is him. Q. You are absolutely certain about it—no possibility about it being someone else? A. I no make a mistake. Q. Is there

any possibility of your making any mistake? The Court: He can't make it any more definite. Q. If this man was on trial for murder, would you be just as sure? Mr. Snyder: I object. This is arguing with the witness and going into speculation. The Court: Objection sustained.'' The ruling is assigned as error. The defendant was on trial for assault with intent to commit murder. It is not at all likely that the witness could have been less certain of identifying defendant had the trial been for murder. It seems to us that the learned counsel subjected the witness to all reasonable tests to discover whether or not he was sure he was not mistaken. We do not think defendant was prejudiced by not having the benefit of an answer to the question.

Sheriff Lucot went to the scene of the crime about twenty minutes after 10 o'clock. He found there ''a broken shovel and a club about two and a half or three feet long.'' He found on both the shovel and club what he described as ''blood on them dried up,'' the blood-stains plainly visible. The club was broken in three pieces. The witness put the pieces together ''and tied them to keep them together.'' Over defendant's objection, the court admitted in evidence the shovel and pieces of the club. The place where the assault was committed was first pointed out to the sheriff by a witness who was not present at the time the assault was made, but was there shortly after, and Chiesa the next morning took the sheriff to the spot. The evidence was sufficient to show that the pieces of the club and the shovel were found at the place where the assault occurred. The character of the wounds inflicted and the admitted testimony of Chiesa as to the circumstances and as to what he observed and heard sufficiently justified making these articles exhibits in the case.

On the cross-examination of defendant's brother, who testified for defendant, the district attorney was permitted, over defendant's objection, to inquire of the witness why he had quit work at the Kennedy mine at Jackson (six miles from Amador City) to come to the Bunker Hill mine, where his brother, the defendant, was working. The inference which the district attorney claimed might be drawn from the circumstance was that defendant's brother changed his place of work to be where he could aid defendant in making the assault. The witness, however, testified that he made the change because he could get better pay at the Bunker Hill mine than at the Ken-

nedy. As there was no evidence that the witness was the "other man" in making the assault, the testimony was immaterial, but we cannot see that defendant was prejudiced by the ruling.

The judgment and order denying motion for a new trial are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 12, 1918.